UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| COLTIN DREW HERZOG, | |
| Plaintiff, | |
| v. | CAUSE NO. 1:25-CV-83-GSL-JEM |
| MATTHEW BUHLMANN, | |
| Defendant. | |

OPINION AND ORDER

Coltin Drew Herzog, a prisoner without a lawyer, filed a complaint, centering on the acts of a DeKalb County Jail officer, who Herzog alleges is harassing him. ECF 18. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Herzog alleges that on February 14, 2025, he and Officer Matthew Buhlmann had a conversation about a lawsuit he had filed against Buhlmann. Then, Herzog describes two more interactions with Buhlmann in the days afterwards, which he believes were done in retaliation for the lawsuit. To state a First Amendment retaliation claim, an inmate must allege: "(1) he engaged in activity protected by the First Amendment; (2)

he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Whitfield v. Spiller*, 76 F.4th 698, 707–08 (7th Cir. 2023) (citation omitted). Filing a lawsuit abut jail conditions is protected First Amendment activity, and these events happened close in time to Buhlmann's questions about the lawsuit, which allows an inference of causation at the pleading stage. *See Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005) (right to access the courts a protected activity); *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (suspicious timing). So, in order to state a claim, Herzog needs to plausibly allege an adverse action.

In determining whether an action could qualify as an adverse act, the court applies an objective standard, inquiring whether the alleged deprivation would likely deter "a person of ordinary firmness" from continuing to engage in protected activity. *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). "Furthermore, the harsh realities of a prison environment affect [the court's] consideration of what actions are sufficiently adverse. Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an action taken against them is considered adverse." *Holleman v. Zatecky*, 951 F.3d 873, 880–81 (7th Cir. 2020) (quotation marks omitted).

The first potential adverse action Herzog mentions occurred on February 19, 2025. Buhlmann came up to the cell house to take Herzog to view camera footage he wanted to see. When Buhlmann arrived, he "screamed," "HERZOG, STEP FORWARD!" ECF 18 at 2. Herzog started to get up when Buhlmann screamed again,

2

"HERZOG STEP FORWARD!" *Id.* Then Buhlmann took him downstairs to view the footage. On the way back, Buhlmann threatened to write him up for refusing a direct order.

Buhlmann's harsh words to Herzog do not plausibly constitute an adverse act. "Relationships between prisoners and prison staff are not always marked by genteel language and good manners." *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019). Nor does the unconsummated threat to write him up constitute an adverse action. The Seventh Circuit has held, "[a] single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action." *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009). If a retaliatory disciplinary charge that was dismissed is not an adverse act, then one that was never filed is not either.

Next, Herzog says that on February 20, 2025, he wrote a grievance about Buhlmann's unprofessionalism. At one point when he was out of his cell, Buhlmann and two other officers went into the cell block and packed up Herzog's property to take to the Disciplinary Unit.[1] When Herzog got to Disciplinary, he asked Buhlmann why he got written up, and Buhlmann ignored him. Herzog asked two more times, and Buhlmann ignored him again. Herzog then said, "That's going in the lawsuit." ECF 18 at 2. Buhlmann then finally "snapped" and said, "Did you just threaten me?" *Id.* Herzog responded, "No. I said that's going in the lawsuit." *Id.* Buhlmann then became "irate"

---

[1] The explanation for Herzog being placed in Disciplinary is found in *Herzog v. Buhlmann*, No. 1:25-cv-80-JD-JEM (N.D. Ind. filed Feb. 26, 2025) at ECF 7. That writeup was based on Herzog filing excessive requests and grievances, culminating in an instance where he filed repeated grievances about the same issue, which Officer Devin Burton deemed harassment and wrote him up. *Id.*

3

and left the block, slamming the door. He came back fifteen minutes later with a write up for "Harassment" and "Interfering with an officer." *Id.* Herzog alleges that Officer Buhlmann violated his First Amendment rights by harassing him and not allowing him to express his intent to sue him.

Herzog has no First Amendment right to express his intent to sue a jail officer. *See Drogosz v. Newkirk*, No. 3:22-CV-387-DRL-MGG, 2023 WL 2237756, at *3–7 (N.D. Ind. Feb. 23, 2023), *appeal dismissed,* No. 23-2335, 2023 WL 9062156 (7th Cir. Oct. 2, 2023) (discussing in depth whether a threat to sue is protected activity and concluding "threats to file a grievance or lawsuit are argumentative and do not advance the substance of the matter about which the inmate is complaining"). "A prisoner has a First Amendment right to make grievances about conditions of confinement, [but] the prisoner must exercise that right in a *manner* consistent with his status as a prisoner." *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010) (quotation marks omitted, emphasis in original). The First Amendment does not protect inmate speech that disrupts good order within the prison. *See Kervin v. Barnes*, 787 F.3d 833, 835 (7th Cir. 2015) ("[B]acktalk by prison inmates to guards, like other speech that violates prison discipline, is not constitutionally protected."). The First Amendment protects Herzog's right to sue, but not a threat to sue, which could be an attempt to coerce a jail official to change his behavior. And, as explained above, Buhlmann's harsh words do not constitute an adverse act.

Next, Herzog turns to an instance that happened on August 11, 2025. He had court that day, and Buhlmann was the one who shackled him and escorted him to the

4

courthouse. On the way there, Herzog asked twice why the cuffs were so tight, and Buhlmann ignored him both times. By the time they reached the courthouse, the shackles had broken the skin on both Herzog's ankles, and the wounds later got infected.

Herzog's mother and grandmother were at the courthouse. Herzog's mother asked Buhlmann if she could give him something—a copy of court rules—to give to Herzog. Buhlmann became "enraged" and screamed, "GET AWAY FROM ME" and "YOU KNOW THAT'S A FELONY." ECF 18 at 3. Herzog's mother replied that she was sorry. Herzog believed that Buhlmann was threatening his mom, but because he was in shackles, he was unable to take any action against him. After this encounter, Buhlmann took Herzog to the jury room and said, "What was that? You know that's a felony." *Id.* Herzog ignored him. When Herzog's attorneys arrived, Buhlman left, saying "I'm sorry for that but you know what you did." *Id.*

The next day, Herzog told his mom, "I'm sorry. He should be happy the cuffs were on because I . . . I'm just saying that motherfucker's jaw would be broke." ECF 18 at 3. Two days later, Dion Urbina wrote him up for "threatening to cause battery to another individual." At the disciplinary hearing, Herzog was sanctioned with 15 days of phone restriction and 15 days in Disciplinary.

Herzog believes his interactions with Buhlmann here constituted harassment.[2] Buhlmann's behavior here does not come close to unconstitutional harassment. Most

---

[2] To the extent Herzog wishes to bring a claim on behalf of his mother, he cannot. Because he is not an attorney, he can represent himself, but he cannot represent another person. *See Elustra v. Mineo*,

5

verbal harassment does not violate the Constitution, and this is not "an extreme case where [jail staff] use an inmate's known psychological vulnerability to cause psychological anguish." *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019).

However, Herzog has stated a claim against Buhlmann under the Fourteenth Amendment for placing the shackles on Herzog's ankles tight enough to break the skin but refusing to adjust them when Herzog brought it to his attention. As a pretrial detainee, the Fourteenth Amendment provides Herzog with reasonable protection from a substantial risk of serious harm. *Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022). An individual defendant violates the Fourteenth Amendment if he "did not take reasonable available measures to abate the risk of serious harm to [plaintiff], even though reasonable officers under the circumstances would have understood the high degree of risk involved, making the consequences of the defendants' conduct obvious." *Pittman v. Madison Cnty.* 108 F.4th 561, 572 (7th Cir. 2024) (emphasis omitted). "A jail official's response to serious conditions of confinement is objectively unreasonable when it is 'not rationally related to a legitimate nonpunitive governmental purpose' or is 'excessive in relation to that purpose.'" *Mays v. Emanuele*, 853 F. App'x 25, 27 (7th Cir. 2021) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). Of note, "negligent

---

595 F.3d 699, 704 (7th Cir. 2010). Moreover, Buhlmann's assertion that Herzog's mother was asking him to commit a crime has some basis in fact. *See* IND. CODE § 35-44.1-3-5(b)(1) (making it a misdemeanor or felony if "[a] person who, without the prior authorization of the person in charge of a penal facility or juvenile facility, knowingly or intentionally . . . delivers, or carries into the penal facility or juvenile facility with intent to deliver, an article to an inmate or child of the facility")

6

conduct does not offend the Due Process Clause," and thus allegations of negligence, even gross negligence, do not state a Fourteenth Amendment claim. *Miranda v. Cnty. of Lake*, 900 F.3d 335, 353 (7th Cir. 2018). Herzog may proceed against Buhlmann for applying the shackles in a way that presented a serious risk of harm to him and for acting unreasonably by not adjusting the shackles after Herzog complained they were tight, causing the shackles to break the skin.

Finally, Herzog sues Lieutenant Zach Shifflett and Jail Commander Joshua Carpenter for not investigating the incidents he reported between himself and Buhlmann. This does not state a claim. A person has no right to demand state officials conduct an investigation. *See Whitlock v. Brueggemann*, 682 F.3d 567, 588 (7th Cir. 2012) (citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005)) ("There is no affirmative duty on police to investigate."); *Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015) ("We note at the outset that Rossi does not have a constitutional right to have the police investigate his case at all, still less to do so to his level of satisfaction.").

There are a few other pending matters to be decided. First, the defendant moved for the court to reconsider granting Herzog in forma pauperis status. ECF 6. He argues that because Herzog has incurred at least three strikes for filing complaints that were dismissed for failure to state a claim, *see* 28 U.S.C. § 1915(g), his in forma pauperis status should be revoked in this case. This case was filed in February 2025. The strikes defendant identifies occurred after this case was filed. Those later strikes have no bearing on whether Herzog was eligible to proceed in forma pauperis when this case was filed. *Abdul-Wadood v. Nathan*, 91 F.3d 1023, 1025 (7th Cir. 1996). ("Section 1915(g)

governs bringing new actions or filing new appeals—the events that trigger an obligation to pay a docket fee—rather than the disposition of existing cases.").

Second, Herzog filed a request for a ruling, citing to Rule 53.1(A) of the Indiana Trial Rules of Civil Procedure, asking for the court to screen the complaint. ECF 14. Rule 53.1 sets special procedures for motions in Indiana state courts that have not been ruled on within 30 days. Many of the Indiana Trial Rules correspond to similar rules in the Federal Rules of Civil Procedure. But the Federal Rules of Civil Procedure, which govern this case, have no rule like Indiana Trial Rule 53.1. That rule has no application here, and Herzog must not file motions or requests based on that rule.

Finally, Herzog moves for a preliminary injunction, asking the court to order Buhlmann to stop all current and future harassment towards him. ECF 17. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Here, Herzog was not allowed to proceed on a claim regarding any alleged harassment by Buhlmann. Therefore, he has no chance of success on the merits of any claim about harassment.

For these reasons, the court:

(1) DENIES the motions (ECF 6, 14, 17);

(2) GRANTS Coltin Drew Herzog leave to proceed against Officer Matthew Buhlmann in his individual capacity for compensatory and punitive damages for applying the shackles on him on August 11, 2025, in a way that presented a serious risk

of harm and for acting unreasonably by not adjusting the shackles after Herzog complained they were tight, causing the shackles to break the skin, in violation of the Fourteenth Amendment;

(3) DISMISSES all other claims;

(4) DISMISSES Zach Shifflett and Joshua Carpenter;

(5) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Officer Matthew Buhlmann at the DeKalb County Jail, with a copy of this order and the complaint (ECF 18);

(6) ORDERS the DeKalb County Sheriff to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(7) ORDERS, under 42 U.S.C. § 1997e(g)(2), Officer Matthew Buhlmann to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on October 10, 2025

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT